E-FILED
Thursday, 22 December, 2011 10:33:00 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| DAWNE CHAPMAN, </br></br>        **Plaintiff,**</br>v.</br></br>THE CITY OF DANVILLE,</br></br>        **Defendant.** | Case No. 10-CV-2159 |

## **OPINION**

This case is before the court for ruling on the Motion for Summary Judgment (#23) filed by Defendant, the City of Danville (City). This court has carefully reviewed the arguments of the parties and the documents filed by the parties. Following this careful and thorough review, the City's Motion for Summary Judgment (#23) is GRANTED.

## FACTS[1]

Plaintiff, Dawne Chapman, began working for the City in 1981. She was hired as Motor Vehicle Parking Superintendent in 1992. The Parking Superintendent job involved running the City's parking garage and lot and handling parking tickets. In 2004, Doug Ahrens became Plaintiff's supervisor. Ahrens held the position of Superintendent of Public Works. Ahrens estimated that, while he was Plaintiff's supervisor, he spent approximately five hours a week on average interacting with Plaintiff. Plaintiff testified that, during an evaluation, Ahrens told Plaintiff that her appearance needed to be more managerial and that

---

[1] The facts are taken from the City's statement of undisputed facts, Plaintiff's statement of additional undisputed facts and the documents submitted by the parties. This court has only included facts which are adequately supported by evidence in the record.

the hair on her face needed to be better maintained and well groomed just as the male employees are required to maintain their beards and mustaches. Plaintiff testified that this happened during her last evaluation, but did not provide a date for when this evaluation occurred. Ahrens testified that he told Plaintiff that someone who interacts with the public needed to have groomed facial hair. Plaintiff said she had a skin condition that prevented her from doing more and Ahrens accepted that statement. At another meeting, Ahrens told Plaintiff that individuals should be called by their first names or titles such as Mr. or Mrs. and should not be addressed in a too familiar manner, such as calling them "honey" or "kid."

In early 2009 there was a City-wide reorganization in which many positions in the City were reorganized and consolidated to conserve money for the City operations. Plaintiff along with a total of 24 City workers were let go from City employment. The Parking Superintendent job was combined with other duties in the new position of Superintendent of Downtown Services. It is undisputed that the new position of Superintendent of Downtown Services included the parking garage duties as well as work involving creating advance planting designs, the selection of plants, oversight of ongoing landscape maintenance and downtown beautification. The job description for Superintendent of Downtown Services stated that an associate or bachelor's degree in business management, landscape design or social services, as well as certifications and other technical training and licenses, was preferred. It is undisputed that Plaintiff did not have any of these qualifications. The job description for the position, which was dated February 6, 2009, listed the job duties for the position. Many of the job duties were duties that Plaintiff had performed when she held the

position of Parking Superintendent. However, some of the listed job duties were expanded to include tasks Plaintiff had not performed previously and one of the job duties listed was "[c]reate advance planting designs for implementation in the various seasons." It is undisputed that none of Plaintiff's prior job experience was in the area of horticulture or plants.

Three internal candidates applied for the position of Superintendent of Downtown Services. The candidates were Plaintiff, Paul Sermersheim and Steven Lane. The position was open only to internal candidates so all three candidates were City employees. All three applicants were interviewed by Ahrens, Brock Burton, who held the position of Manager of Recreation and Public Facilities, and Sherri Johnson, who was the Human Resources Director. During her job interview, Plaintiff explained she was not a licensed or knowledgeable horticulturist, did not consider herself a "green thumbed" individual, and was someone who usually "turned plants brown" and killed them. Plaintiff said that she would be willing to give it "the good old college try." It is undisputed that both Steven Lane and Paul Sermersheim had been creating planting designs or overseeing plantings for the City. Plaintiff had been involved in maintaining some of the plantings.

Following the interviews, a decision was made to recommend Sermersheim for the position. Burton testified that Steven Lane was out of the running for the position because the committee had decided to recommend him for a different job. The interviewing committee's recommendation was conveyed to Mayor Scott Eisenhauer. Ahrens testified that Sermersheim was chosen because of his knowledge and training regarding horticulture

as well as his grant writing experience. Ahrens testified that there was going to be an anticipated focus on beautification efforts in the downtown area as well as the opportunity to bring in outside funding. Burton testified that he recommended Sermersheim for the position because the "new position that was created we were looking more towards somebody who had the background and ability for the beautification of the downtown area" and Sermersheim was the "best available candidate for that position." Eisenhauer testified that, regarding the Superintendent of Downtown Services position, the role of motor vehicle parking was a much smaller aspect of the new position. Eisenhauer said that the position focuses on the downtown area as a whole, including landscaping.

Sermersheim was hired for the position and Plaintiff lost her employment with the City. Plaintiff asked Ahrens for a written job recommendation and he wrote one for her which she used to apply for jobs with other employers, including her current position with the News-Gazette newspaper.

Sermersheim resigned after a short time on the job and Plaintiff again applied for the position. She did not receive an interview. In April 2009, Shelly Larson was hired as Superintendent of Downtown Services. Larson has an extensive background in landscaping. Larson was deposed and testified that she spends about 20% of her time performing duties related to parking. A modified job description for the position of Superintendent of Downtown Services was used when Larson was hired for the position. The new job description was dated April 9, 2009, and specifically stated that the position had a "strong emphasis on beautification of the Downtown Danville corridor including landscape planning

and design."

PROCEDURAL HISTORY

On May 13, 2009, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights (IDHR) and the Equal Employment Opportunity Commission (EEOC). Plaintiff alleged that she was discriminated against on the basis of her gender when she was not hired into the position in February 2009. Plaintiff stated that her gender is female but "in my appearance and behavior I do not conform to the prevailing stereotypes regarding how women should look and act." On May 18, 2009, Plaintiff filed another charge of discrimination with the IDHR. Plaintiff alleged that her sexual orientation is lesbian and that she was discriminated against because of her sexual orientation when she was not hired for the new position in February 2009. On April 9, 2010, the IDHR dismissed both of Plaintiff's charges for lack of substantial evidence.

On June 28, 2010, Plaintiff filed a Verified Complaint in the circuit court of Vermilion County. In Count I, Plaintiff alleged gender discrimination in violation of the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/1-101 et seq. Plaintiff alleged that Ahrens did not feel comfortable being with Plaintiff and disliked having to interact with Plaintiff "because of her appearance, that is, because Plaintiff is a woman who looks and acts in some respects like a man." Plaintiff further alleged that Ahrens' decision to hire Sermersheim over Plaintiff for the new position was motivated either wholly or substantially by Ahrens' discomfort or dislike at having to interact with Plaintiff. In Count II, Plaintiff alleged discrimination based upon her sexual orientation in violation of the Illinois Human Rights Act. Plaintiff alleged

5

that Ahrens disliked having to interact with Plaintiff "because of her sexual orientation, that is, because Plaintiff is a lesbian." Plaintiff alleged that Ahrens' decision to hire Sermersheim for the new position instead of Plaintiff "was motivated either wholly or substantially" by Ahrens' "discomfort or dislike at having to interact with Plaintiff." In Count III, Plaintiff alleged gender discrimination in violation of Title VII of the Civil Rights Act of 1964. Plaintiff again alleged that Ahrens did not feel comfortable with Plaintiff because of her appearance as "a woman who looks and acts like a man" and that the decision to hire Sermersheim was "motivated either wholly or substantially" by Ahrens' "discomfort or dislike at having to interact with Plaintiff."

On July 23, 2010, the City filed a Notice of Removal (#1) and removed the case to this court based upon the federal civil rights claim contained in Count III of the Complaint. On September 23, 2011, the City filed a Motion for Summary Judgment (#23) and Exhibits (#24) in support, consisting of deposition transcripts and documents attached to the transcripts. On October 17, 2011, Plaintiff filed her Response to Motion for Summary Judgment (#25). Plaintiff attached her own affidavit, dated October 14, 2011, in support of her Response. On October 31, 2011, the City filed a Reply (#27).

ANALYSIS

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

6

Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Singer v. Raemisch, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing "[i]nferences that are supported by only speculation or conjecture." See Singer, 593 F.3d at 533, quoting Fischer v. Avanade, Inc., 519 F.3d 393, 401 (7th Cir. 2008).

The party opposing summary judgment may not rely on the allegations contained in the pleadings. Waldridge, 24 F.3d at 920. "[I]nstead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004), quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003). Specifically, to survive summary judgment, "the nonmoving party must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." Kampmier v. Emeritus Corp., 472 F.3d 930, 936 (7th Cir. 2007), citing Celotex Corp., 477 U.S. at 322-23.

## GENDER DISCRIMINATION

There is no dispute in this case that discrimination based on failure to conform to sex stereotypes is discrimination "because of" sex under Title VII. See Doe by Doe v. City of Belleville, 119 F.3d 563, 581 (7th Cir. 1997), vacated on other grounds, 523 U.S. 1001 (1998). It is also undisputed that such discrimination is gender discrimination under the Illinois Human Rights Act. This court agrees with the City, however, that the record in this case contains no evidence of such discrimination.

A plaintiff claiming gender discrimination may proceed under the indirect, burden-shifting method set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), or may proceed using the direct method. See Fischer, 519 F.3d at 401-02. To establish a prima facie case of gender discrimination under the indirect method, a plaintiff must show that: (1) she was a member of the protected class ; (2) she applied for and was qualified for the position sought; (3) she was rejected for the position; and (4) the position was given to someone outside the protected class who was similarly or less qualified than she. Hobbs v. City of Chicago, 573 F.3d 454, 460 (7th Cir. 2009); see also Fischer, 519 F.3d at 402. The presumption of discrimination created by establishing a prima facie case shifts the burden to the defendant "to produce a legitimate, noninvidious reason for its actions." Hobbs, 573 F.3d at 460, quoting Atanus v. Perry, 520 F.3d 662, 672, (7th Cir. 2008). If the defendant rebuts the prima facie case, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are merely pretextual. Hobbs, 573 F.3d at 460.

The City argued that it is entitled to summary judgment because Plaintiff cannot show

that she was qualified for the position. The City argued that the evidence shows that Plaintiff was not chosen for the position due to her lack of qualifications, including her own admission that she did not have a horticulture background and plants did not do well under her care.

In her Response, Plaintiff conceded that "[t]here is no dispute that [she] was unqualified to do a job focused on horticulture." Plaintiff argued, however, that there was sufficient evidence that, in February 2009, the job at issue was not focused on horticulture but was still substantially a parking job. Plaintiff has relied, heavily, on the February 2009 job description for the position. Plaintiff argued that, based on the job description, it was a parking oriented position very similar to the job she had been doing, making her the most qualified person for the position. This court does not agree because this argument completely ignores a great deal of undisputed evidence.

It is undisputed that the Parking Superintendent job was combined with other duties in the new position of Superintendent of Downtown Services. It is undisputed that the new position of Superintendent of Downtown Services included the parking garage duties as well as work involving creating advance planting designs, the selection of plants, oversight of ongoing landscape maintenance and downtown beautification. It is undisputed that Plaintiff did not have any of the preferred qualifications listed in the job description. It is undisputed that none of Plaintiff's prior job experience was in the area of horticulture or plants and she told the interview committee that she was not a licensed or knowledgeable horticulturist, was not green-thumbed and usually killed plants. In addition, it is undisputed that one of the job duties listed on the February 2009 job description was "[c]reate advance planting designs for

implementation in the various seasons." Based upon these undisputed facts, it is clear that Plaintiff cannot establish a prima facie case of discrimination. No non-fanciful argument can be made that the new position of Superintendent of Downtown Services did not include duties related to landscaping and beautification, duties Plaintiff has conceded she was not qualified to perform. Therefore, it is clear that Plaintiff was not qualified for the position.

Even if Plaintiff could somehow establish a prima facie case, the City has stated a non-discriminatory reason for the choice of Sermersheim for the position rather than Plaintiff. In its statement of undisputed material facts, the City stated that the "choice of Paul Sermersheim over Plaintiff centered on the new functions of the new position." Plaintiff did not dispute this fact and, therefore, has conceded it. See Waldridge, 24 F.3d at 922. Moreover, the City has provided evidence to show that Sermersheim was chosen because of his landscaping abilities and experience and his experience with grant writing. In fact, Plaintiff conceded in her argument that "[b]oth Sermersheim and Steve Lane (had he remained in the running) were clearly more qualified than [Plaintiff] to work on beautification."

In an attempt to show pretext, Plaintiff has argued that a reasonable jury could doubt whether the City's stated intention to focus on landscaping and beautification rather than parking really was true. Plaintiff argued that it was extremely odd for the City to begin focusing on beautification at a time when it was undergoing a reduction in force caused by the need to conserve money. Plaintiff has provided no evidence, however, to support her assertion that the City did not really intend for the position to focus on landscaping and

beautification. In fact, the evidence is otherwise. Shelly Larson, who was hired for the position in April 2009, testified that she spends only about 20% of her time on parking related duties. Whether this new focus was a good idea for the City is not an inquiry this court needs to undertake.

"In order 'to show pretext, a plaintiff must show that (1) the employer's non-discriminatory reason was dishonest and (2) the employer's true reason was based on a discriminatory intent.'" Stockwell v. City of Harvey, 597 F.3d 895, 901 (7th Cir. 2010), quoting Fischer, 519 F.3d at 403. The Seventh Circuit has explained that, while indirect proof of pretext is permissible, "we must remember that, even if the business decision was unreasonable, pretext does not exist if the decisionmaker honestly believed the nondiscriminatory reason." Stockwell, 597 F.3d at 902. "This is because courts are not 'superpersonnel department[s]' charged with determining best business practices." Stockwell, 597 F.3d at 902, quoting Blise v. Antaramian, 409 F.3d 861, 867 (7th Cir. 2005). In this case, there is no reason to question that the decisionmakers, including Ahrens, sincerely believed that the new position included job duties related to landscaping and beautification because, in fact, it is undisputed that the position included those duties.

For all of the reasons stated, this court concludes that Plaintiff cannot show gender discrimination based upon the indirect method of proof.

The City has also argued that Plaintiff cannot meet the requirements to prove her case under the direct method of proof. Plaintiff contended that she has sufficient circumstantial evidence of gender discrimination to avoid summary judgment. Under the direct method of

proving discrimination, Plaintiff must show either through direct or circumstantial evidence that the City's decision not to hire her for the position was motivated by an impermissible purpose, in this case, gender discrimination. See Koszola, 385 F.3d at 1109. Plaintiff has presented no direct evidence, which "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." Koszola, 385 F.3d at 1109, quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000). However, a "plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker. That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." Koszola, 385 F.3d at 1109, quoting Rhodes v. Ill. Dep't of Transp., 359 F.3d 498, 504 (7th Cir. 2004).

Plaintiff has pointed to the evidence that Ahrens talked to her about her facial hair during an evaluation. However, it is undisputed that, when Plaintiff explained that a skin condition prevented her from doing any more to keep her facial hair groomed, Ahrens accepted this explanation. There is no evidence that Ahrens ever said anything else about it during the approximately five hours per week that he interacted with Plaintiff while he was her supervisor. Plaintiff argues that Ahrens' bringing up the issue at all was "insensitive" and is evidence of Ahrens' prejudice. However, Plaintiff testified that, other than this comment by Ahrens, no one from the City has ever commented on her sexual orientation or appearance. Plaintiff testified that she kept three diaries while she worked as Parking Superintendent and they contain no references regarding anyone from the City making

comments about her sexual orientation or appearance. It is undisputed that Ahrens never made any derogatory statements about Plaintiff's sexual orientation or physical appearance, nor did he ever hear other City employees make such comments. This court concludes that evidence of one comment by Ahrens is not sufficient to create a "convincing mosaic" which points directly to a discriminatory reason for the City's action.

Plaintiff has submitted her affidavit as an attachment to her Response to the Motion for Summary Judgment. The affidavit states, in pertinent part:

> 4. I believe that Doug Ahrens disliked me and was uncomfortable being around me. My belief is not based on anything he said. It is based on his facial expressions, body language, and tone of voice throughout many interactions with me during the time I worked under him.
>
> 5. I believe Doug Ahrens' dislike for me was mainly caused by who I am, how I look, and the way I communicate. I do not believe it was caused by anything I did, because I noticed it from the beginning of the time I worked under him.

It is well settled that conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact. Butts, 387 F.3d at 924; Hall v. Bodine Elec. Co., 276 F.3d 345, 354 (7th Cir. 2002). Plaintiff's affidavit shows that her "belief" that Ahrens disliked her was not supported by anything he said or any actions he took against her but, instead, was based on her interpretation of his "facial expressions, body language, and tone

13

of voice." This interpretation, supported solely by Plaintiff's own speculation or conjecture, is not sufficient to avoid summary judgment. See Singer, 593 F.3d at 533; Frieson v. County of Cook, 2010 WL 2927428, at *10 (N.D. Ill. 2010) (evidence of the plaintiff's subjective beliefs not sufficient to avoid summary judgment). Moreover, Plaintiff has presented no evidence that any dislike on the part of Ahrens was based upon her gender and not some other reason.[2]

This court concludes that Plaintiff cannot show gender discrimination based upon the direct method of proof. Because Plaintiff has not shown that there is any genuine dispute of material fact in this case which precludes summary judgment, the City is entitled to summary judgment on Plaintiff's claims of gender discrimination.

## SEXUAL ORIENTATION DISCRIMINATION

Plaintiff brought her claim of sexual orientation discrimination under the Illinois Human Rights Act because discrimination based on a person's sexuality or sexual orientation is not covered by Title VII. See Spearman v. Ford Motor Co., 231 F.3d 1080, 1085-86 (7th Cir. 2000). The City is entitled to summary judgment on this claim because Plaintiff has presented this court with no evidence to support her claim.[3] Again, it is undisputed that the

---

[2] Plaintiff has argued that, even though the evidence showed that Mayor Eisenhauer ultimately decided to hire Sermersheim in February 2009, based upon a recommendation by the interviewing committee, a rational jury could conclude that Ahrens controlled the decision and Ahrens' "forbidden motives" may be imputed to the City. Because this court concludes that there is no evidence of any discriminatory intent on the part of Ahrens, there is no need to discuss this issue.

[3] Plaintiff has pointed out that Ahrens testified that he did not conclude that Plaintiff was a lesbian even though he knew she lived with another woman whom she described as her life partner. Ahrens also testified that he did not put the label "lesbian" on Plaintiff because she did not describe herself that way. Plaintiff argued that Ahrens' testimony was implausible and false

14

choice of Sermersheim for the position rather than Plaintiff centered on the new functions of the position, functions which he was qualified to perform and Plaintiff was not.

Plaintiff has asked this court to decline to exercise supplemental jurisdiction over this state law claim and remand this claim to the circuit court of Vermilion County because it raises a novel issue under Illinois law. This court agrees with the City, however, that the exercise of supplemental jurisdiction over Plaintiff's state law claim is warranted in this case because it is clear that Plaintiff has no evidence to support her claim of discrimination on the basis of her sexual orientation.

IT IS THEREFORE ORDERED THAT:

(1) The Motion for Summary Judgment (#23) filed by the City of Danville is GRANTED. Judgment is entered in favor of the City and against Plaintiff on all of Plaintiff's claims.

(2) The final pretrial conference scheduled for January 20, 2012, at 1:30 p.m. and the jury trial scheduled for February 6, 2012, at 9:00 a.m. are hereby VACATED

. (3) This case is terminated.

ENTERED this 22nd day of December, 2011.

s/MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE

---

and suggests that he harbored discriminatory motives against her. Plaintiff contended that this is sufficient for an inference of discrimination. This court does not agree. While this court must draw all reasonable inferences in favor of Plaintiff in ruling on the City's Motion for Summary Judgment, this court concludes that an inference of discrimination against Plaintiff based on Ahrens' testimony is too big a stretch to be reasonable. Such an inference could only be based on speculation or conjecture.